JUDGE NATHAN

#2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 2849

| | |
|---|---|
| Andrea Brannon,<br>              Plaintiff<br><br>v.<br><br>City of New York,<br>Officers Doe 1 - 20<br>              Defendants | ___-CV-___<br><br>**COMPLAINT FOR VIOLATIONS<br>OF 42 USC § 1983**<br><br>**JURY DEMANDED** |

## SUMMARY

1. The New York City Police Department ("NYPD") has a drug problem: because of the way state forfeiture laws operate, combined with federal grants for drug enforcement, it is profitable for the NYPD to ignore constitutionally-mandated probable cause requirements before conducting an arrest.

2. As such, the NYPD has implemented an "arrest first, ask questions later" custom or practice whereby anyone in the vicinity of suspected drug activity ends up in handcuffs, probable cause be damned.

3. Plaintiff Andrea Brannon ("BRANNON") has now twice been seized and non-consensually searched for drugs by narcotics officers (the "OFFICERS") who raid nightlife events under this "arrest first, ask questions later" policy.

4. At no point surrounding the two incidents was BRANNON aware of, let alone in possession of, unlawful drugs, nor was there even reasonable suspicion that she may be.

## JURY TRIAL

5. BRANNON demands a jury trial.

## PARTIES

6. Plaintiff BRANNON is an individual residing in the city, county, and state of New York.

7. Defendant City of New York ("the City") is a city incorporated under the laws of the State of New York, which operates and employs all officers of the New York Police Department and exists partially within this Court's district.

8. Defendants Officers Doe 1 – 20 are, and was at all times relevant, officers of the New York City Police Department, pseudonymously named *in their individual capacity*, with their actual names to be amended to the complaint after they are identified during discovery.

9. Defendant Officers Doe 1 – 10 are the officers involved in the 2012 incident, whereas Officers Doe 11 – 20 are the officers involved in the 2014 incident.

## JURISDICTION & VENUE

10. This Court has subject matter jurisdiction under 28 USC § 1331 on the basis of there being a federal question relating to 42 USC § 1983.

11. Venue is appropriate because one of the two incidents that gave rise to this complaint occurred within the district boundaries for this Court, because Defendant City of New York is a city largely within the district boundaries for this Court, and because some or all of Defendant Officer Does work within the district boundaries for this Court.

## ALLEGATIONS OF FACT

12. On or about November 25th, 2012, at or around 1:00 AM, at or around 299 Meserole St., Brooklyn, NY, BRANNON was hired to greet guests at a music event.

13. A group of plainclothes NYPD officers (the OFFICERS) approached BRANNON with visible badges and identified themselves as officers of the New York Police Department.

14. The officers confiscated paperwork (primarily, names of invited guests) which was in BRANNON's immediate possession.

15. The officers reviewed the paperwork in front of BRANNON without her consent.

16. An officer indicated to BRANNON that she was not free to leave.

17. After the guests of the party had been removed, BRANNON and several of her co-workers were gathered together by the OFFICERS and ordered to follow the OFFICERS outside.

18. The officers lined BRANNON and her co-workers up in front of the building.

19. The officers asked various questions of BRANNON and her co-workers.

20. At no time did the officers advise BRANNON of her *Miranda* rights.

21. BRANNON and her co-workers were then moved towards the back of a police van, where an officer paraded leg shackles in front of them, as if they were about to be restrained and placed into the van.

22. After about 45 minutes, the OFFICERS realized that they had no crime with which to charge BRANNON, and set her free.

23. Upon information and belief, no individuals were charged with narcotics violations on that evening, and the OFFICERS managed only to write a citation to the event organizer relating to permitting.

24. On or about March 20th, 2014, at or around 2:00 AM, at or around 93 2nd Ave., New York, NY, BRANNON was a customer of Lit Lounge, a popular East Village nightlife venue.

25. At that time, plainclothes offices (the OFFICERS) wearing badges entered the venue, surrounded BRANNON and one other individual, and immediately placed them in handcuffs.

26. A friend of BRANNON asked the OFFICERS their command and reason for arresting BRANNON.

27. The officers replied that they were from Manhattan [South] Narcotics and that BRANNON was "involved in the dealing of narcotics."

28. The officers led BRANNON outside of the venue onto the street.

29. At no time did the officers advise BRANNON of her *Miranda* rights.

30. On the street, they non-consensually searched BRANNON's person.

31. Their search yielded no contraband.

32. The OFFICERS, realizing they made a mistake, removed the handcuffs from BRANNON.

33. An OFFICER remarked to BRANNON that she was "free to go back to getting stoned."

34. BRANNON was not "stoned," nor in the process of planning to become that way.

35. BRANNON asked an officer why she was suspected of "dealing in narcotics."

36. An officer indicated it was because she had been talking to the other individual who was arrested.

37. BRANNON did not know the other individual personally, and recognized him only as another customer at Lit Lounge that she encountered for the first time that night.

38. BRANNON had spoken with the other individual for no more than a few minutes, and the substance of that conversation was casual bar conversation that in no way discussed illegal substances.

39. BRANNON had no knowledge that the other individual was (allegedly) dealing in narcotics until the police told her so.

40. During neither encounter was BRANNON in possession of any illegal substances.

41. During neither encounter was BRANNON facilitating the buying or selling of any illegal substances.

42. During neither encounter was BRANNON even aware of any "dealing in narcotics" by any person.

43. During neither encounter did the OFFICERS have any probable cause that BRANNON was committing any crime.

44. During both encounters, BRANNON was subject to humiliating public detention and non-consensual search and felt extraordinarily embarrassed about being on display as if she were a criminal.

45. NYPD officers enforcing drug laws have an astronomically poor track record for respecting the civil rights of the citizens.

46. Earlier this year, the NY Daily News reported on the 12 "most sued" NYPD officers over the past decade, obtaining its data from a public records request from the City.

47. Of the 12 officers on the "most sued" list, 9 of them were dedicated narcotics officers.

48. Of the 3 remaining officers, an overwhelming majority of the lawsuits were for false arrests relating to drug charges: individuals stopped on the streets and searched for drugs without cause, individuals caught up in drug raids in which no drugs were found, *etc.*

49. In order to make the "most sued" list, an officer must have been sued *at least 17 times*.

50. Nearly all of these 231 cases against 12 officers settled out-of-court, costing the taxpayers at least $7,709,071 over 10 years.

51. Upon information and believe, many if not all of these officers *are still employed by the NYPD* despite the City being painfully aware of their abysmal track record regarding civil rights.

52. These officers are still employed after being sued 17+ times each because the NYPD encourages their behavior.

53. The reason the NYPD has no incentive to discourage their behavior is that despite paying out $7.7M over 10 years, the NYPD pulls in at least $17,920,268 *per year* in drug forfeitures according to their own reporting[1].

54. Even if a criminal defendant is acquitted because evidence is suppressed as a result of an unlawful search, that person may still be subject to *civil* forfeiture, meaning that even if a search and seizure was found to be unlawful, if the victim of that civil rights violation happened to have a few specs of marijuana in their possession, the unlawful search and seizure may *still* be profitable for the police.

55. The matter is made worse by the fact that the federal government offers grants to law enforcement agencies for drug enforcement, further incentivizing that NYPD's zeal for drugs at the cost of civil liberties.

---

[1] Source: U.S. Office of Justice Programs, Bureau of Justice Statistics, Law Enforcement Management and Administrative Statistics (LEMAS) 2003 Dataset, a collection of statistics reported to the federal government by law enforcement agencies including the NYPD. See http://www.bjs.gov/index.cfm?ty=dcdetail&iid=248 for study information and https://www.icpsr.umich.edu/icpsrweb/NACJD/series/92/studies/4411 for analysis of the data.

## CLAIMS FOR RELIEF

### Count 1 – Violation of 42 USC § 1983
### (Premised on Fourth Amendment Unlawful Seizure – 2012 Encounter)

56. At the point at which the OFFICERS had indicated to BRANNON that she was not free to go, the OFFICERS seized BRANNON's person without probable cause, or even reasonable suspicion, that she was in the process of committing a crime.

57. BRANNON's detention constitutes a deprivation of "rights, privileges, or immunities."

58. The NYPD regularly engages in this behavior to the point where it must be considered a "custom or practice."

59. This charge is levied against the New York Police Department *a la Monell* and Officers Doe 1 - 10.

### Count 2 – Violations of 42 USC § 1983
### (Premised on Fourth Amendment Unlawful Search – 2012 Encounter)

60. At the point at which the OFFICERS reviewed the documentation in BRANNON's possession, the OFFICERS conducted a search upon BRANNON's belongings without probable cause, or even reasonable suspicion, that she was in the process of committing a crime.

61. BRANNON's search constitutes a deprivation of "rights, privileges, or immunities."

62. The NYPD regularly engages in this behavior to the point where it must be considered a "custom or practice."

63. This charge is levied against the New York Police Department *a la Monell* and Officers Doe 1 - 10.

### Count 3 – Violation of 42 USC § 1983
### (Premised on First Amendment Freedom of Assembly – 2012 Encounter)

64. The negative actions taken by the OFFICERS against BRANNON were undertaken solely because BRANNON was in the presence of others whom the OFFICERS suspected of wrongdoing, without any reason to suspect that BRANNON herself was actually engaged in wrongdoing.

65. Derogatory action taken as a result of BRANNON's choice of who to associate with constitutes a deprivation of "rights, privileges, or immunities."

66. The NYPD regularly engages in this behavior to the point where it must be considered a "custom or practice."

67. This charge is levied against the New York Police Department *a la Monell* and Officers Doe 1 - 10.

## Count 4 – Violation of 42 USC § 1983
### (Premised on Fourth Amendment Unlawful Seizure – 2014 Encounter)

1. At the point at which the OFFICERS restrained BRANNON's arm and placed her in handcuffs, the OFFICERS seized BRANNON's person without probable cause, or even reasonable suspicion, that she was in the process of committing a crime.

2. BRANNON's detention constitutes a deprivation of "rights, privileges, or immunities."

3. The NYPD regularly engages in this behavior to the point where it must be considered a "custom or practice."

4. This charge is levied against the New York Police Department *a la Monell* and Officers Doe 11 - 20.

## Count 5 – Violations of 42 USC § 1983
### (Premised on Fourth Amendment Unlawful Search – 2012 Encounter)

5. At the point at which the OFFICERS searched BRANNON's person, the OFFICERS conducted a search upon BRANNON without probable cause, or even reasonable suspicion, that she was in the process of committing a crime.

6. BRANNON's search constitutes a deprivation of "rights, privileges, or immunities."

7. The NYPD regularly engages in this behavior to the point where it must be considered a "custom or practice."

8. This charge is levied against the New York Police Department *a la Monell* and Officers Doe 11 - 20.

## Count 6 – Violation of 42 USC § 1983
### (Premised on First Amendment Freedom of Assembly – 2012 Encounter)

9. The negative actions taken by the OFFICERS against BRANNON were undertaken solely because BRANNON was in the presence of another whom the OFFICERS suspected of wrongdoing, without any reason to suspect that BRANNON herself was actually engaged in wrongdoing.

10. Derogatory action taken as a result of BRANNON's choice of who to associate with constitutes a deprivation of "rights, privileges, or immunities."

11. The NYPD regularly engages in this behavior to the point where it must be considered a "custom or practice."

12. This charge is levied against the New York Police Department *a la Monell* and Officers Doe 11 - 20.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief:

a) Compensatory and punitive damages against the City of New York in the amount of US$1,000,000.00 per incident.

b) Cost of the action.

c) Reasonable attorney's fees, should BRANNON retain an attorney[2].

d) Any other such relief as this Court deems appropriate.

Dated: New York, NY
April 2nd, 2014
21st

Respectfully submitted,

*(signature)*

Andrea Brannon
Plaintiff, *Pro Se*
315 W. 33rd St., #31C
New York, NY 10001
E-mail: moneta.xi@gmail.com

---

[2] BRANNON is presently representing herself in this action *pro se*, and is <u>not</u> seeking attorney's fees for any *pro se* work. BRANNON <u>only</u> seeks attorney's fees in the event that she retains an attorney at a later point, and only for the work completed by said attorney.

- 9 -