UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



The Estate of Andrea Brannon,

                Plaintiff,

–v–

City of New York et al.,

                Defendants.

14-CV-2849 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    Before the Court is Magistrate Judge Sarah Netburn's Report and Recommendation ("Report"), Dkt. No. 51, regarding Defendants' motion to enforce a settlement agreement. Following *de novo* review, the Court agrees with Judge Netburn's well-reasoned Report and adopts it in its entirety.

## I.    LEGAL STANDARD

    A district court "may designate a magistrate judge to hear and determine" certain motions and to "submit . . . proposed findings of fact and recommendations for the disposition" of those motions. *See* 28 U.S.C. § 636(b)(1)(A), (B). A party may file written objections to the magistrate judge's report and recommendation within fourteen days of its filing. *Id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party submits a timely objection, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If "no specific written objection is made, the district court may adopt those portions as long as the factual and legal basis supporting the findings and conclusions set forth . . . are not clearly erroneous or contrary to law." *Norman v. Astrue*, 912 F. Supp. 2d 33, 39 (S.D.N.Y. 2012) (quoting *Eisenberg v. New*

*England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008)). Because Plaintiff objects to certain aspects of Judge Netburn's application of the relevant law, the Court reviews *de novo* those portions of the Report to which Plaintiff objects.

## II. BACKGROUND

Plaintiff submitted a timely objection to Judge Netburn's Report, Dkt. No. 52, to which Defendants responded. Dkt. No. 54. Plaintiff only disputes Judge Netburn's application of the law to the facts of this case and does not dispute Judge Netburn's summary of the facts. *See* Dkt. No. 52. As a result, the Court adopts Judge Netburn's recitation of the relevant facts. Report at 1-5. The Court assumes familiarity with this material. Relevant here, Andrea Brannon, the original Plaintiff in this action, passed away on February 7, 2015. Report at 4. On May 14, 2015, Judge Netburn granted a motion for substitution brought by Brannon's boyfriend, Jonathan Corbett, who was appointed administrator of Brannon's estate. *Id.*

## III. DISCUSSION

As Judge Netburn noted in her Report, the Second Circuit has not ruled on whether a district court should apply federal or state law to a motion to enforce settlement in a case invoking federal question jurisdiction. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). However, "there is no material difference between the applicable state [and] federal common law standard[s]." *Id.* As a result, the parties focus on Judge Netburn's analysis under the federal law standard. *See* Dkt. No. 52 at 1 n.1. The Court will follow suit.

The Second Circuit has explained that, to evaluate whether parties are bound by an agreement "in the absence of a document executed both sides," the district court should consider:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the

> agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Plaintiff objects to Judge Netburn's application of each of these factors.

### A. Express Reservation

Plaintiff first argues that Judge Netburn improperly applied the "express reservation" factor. Dkt. No. 52 at 1. Plaintiff argues that "an express agreement by the parties—either to be bound, or not to be bound—. . . should control" but that "when the parties are silent on the matter, this factor should provide little guidance to the Court." *Id.* at 1-2. In sum, Plaintiff suggests that the *absence* of an express reservation cannot weigh in favor of enforcing a settlement agreement. This position is contrary to the law in this circuit.

The Second Circuit has framed the "express reservation" inquiry as a question of whether there was some "signal[] [of] the parties' intent to bind themselves only at the point of signature." *Ciaramella*, 131 F.3d at 324. Under this analysis, courts have frequently found the absence of such a reservation to weigh in favor of enforcing a settlement. *See Am. Home Assurance Co. v. Cent. Transp. Int'l, Inc.*, 354 F. App'x 499, 500 (2d Cir. 2009) (this factor weighed in favor of enforcement where there was "no *objective* evidence that either party expressly or impliedly reserved the right not to be bound by their oral agreement"); *Aguiar v. New York*, No. 06-CV-3334 (THK), 2008 WL 4386761, at *5-*6 (S.D.N.Y. Sept. 25, 2008) *aff'd*, 356 F. App'x 523 (2d Cir. 2009) ("[T]he first Winston factor supports enforcing the oral settlement agreement" because there was "no express reservation of the right not to be bound."); *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 194 (S.D.N.Y. 2006) (finding "no express reservation of the right not to be bound in the absence of a writing"); *Kilcullen v. Metro N. Commuter R.R. Co.*, No. 95-CV-6331 (CSH), 1998 WL 647171, at *6 (S.D.N.Y. Sept. 22, 1998)

3

(same). It is certainly true that an express agreement to be bound, or not to be bound, should be given great weight. However, the cases in this circuit are clear that the *absence* of an express or implied reservation also weighs in favor of enforcement. *See Am. Home Assurance Co.*, 354 F. App'x at 500. As a result, the Court agrees with Judge Netburn that this factor weighs in favor of enforcement.

### B.    Partial Performance

Next, Plaintiff argues that Judge Netburn erred in her application of the "partial performance" factor. Dkt. No. 52 at 2. As an initial matter, Judge Netburn did not place much weight on this factor. *See* Report at 11 ("[T]his factor either ways [sic] lightly in favor of enforcement, or is neutral."). However, Judge Netburn did note in passing that "[a]rguably, Corbett's petition for letters of administration, sought in order to 'formalize settlement,' could constitute performance toward settlement." *Id*. Plaintiff argues that petitioning for letters of administration does not constitute partial performance.

As explained by the Second Circuit, the inquiry here is "whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella*, 131 F.3d at 325. At least some courts have found that taking steps toward executing a settlement agreement constitutes such partial performance. *See, e.g., United States v. $660,200.00*, 423 F. Supp. 2d 14, 29 (E.D.N.Y.). In his petition for letters of administration, Corbett indicated under oath that Brannon and Defendants "had informally negotiated a settlement of $1,850" prior to Brannon's sudden death and that he would "seek to formalize settlement." Dkt. No. 46 Ex. 3 at 2. Because Corbett, in petitioning for letters of administration, sought to formalize the $1,850 settlement, the Court agrees with Judge Netburn that he arguably partially performed by taking steps toward executing the agreement. *See*

4

*$660,200.00*, 423 F. Supp. 2d at 29. However, the Court also agrees with Judge Netburn that, given the context, this factor ultimately weighs neither for or against enforcement. *See Case v. City of New York*, No. 12-CV-2189 (AJN), 2012 WL 5951296, at *6 (S.D.N.Y. Nov. 28, 2012) (collecting cases where the partial performance *Winston* factor was neutral).

### C. Material Terms Left Undecided

Third, Plaintiff claims that Judge Netburn misapplied the third factor of the *Winston* test, which analyzes "whether all of the terms of the alleged contract have been agreed upon." *Winston*, 777 F.2d at 80. In support of this contention, Plaintiff argues that a "massively significant" term of the agreement, the extent of the release, was never addressed. Dkt. No. 52 at 3. Specifically, Plaintiff argues that it is unclear whether Brannon "would have agreed to release Defendants from the injuries described in the complaint or all injuries relating to the incidents in the complaint." *Id*. The practical import of this deficiency, Plaintiff emphasizes, is the viability of a wrongful death claim against Defendants. *Id*. at 3-4.

The Second Circuit has clarified that the third *Winston* factor should evaluate whether the parties have agreed "on all *material* terms." *Ciaramella*, 131 F.3d at 325 (emphasis added). Plaintiff has not put forth any evidence suggesting that the possibility of a wrongful death suit was material to the parties at the time of the negotiations between Brannon and Defendants, nor has he pointed to any legal authority indicating that the hypothetical possibility of future claims make the extent of a release a material term under *Winston*. More importantly, however, it appears that the parties *did* agree on the scope of the release. The emails between Brannon and Defendants indicate that Brannon would "dismiss both counts" of her Complaint and that Defendants would "settle all of plaintiff's claims *to date*" for $1,850, Report at 4 (emphasis added), language that Defendants concede releases "only . . . claims thus far brought by Brannon

at the time she entered into the agreement" on February 3, 2015. Dkt. No. 54 at 6. Based on this information, the Court agrees with Judge Netburn that, as of February 3, 2015, there were no material terms left to be negotiated between Brannon and Defendants, a factor weighing in favor of enforcement.

### D. Usually Committed to a Writing

Finally, Plaintiff argues Judge Netburn incorrectly applied the fourth *Winston* factor because "[s]ettlement agreements between the City of New York and civil rights litigants [] are virtually always . . . committed to a writing." Dkt. No. 52 at 4. It is true that the fourth *Winston* factor considers "whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F2d at 80. However, this prong of the analysis focuses on "whether the settlement terms are sufficiently complex or involve long time periods such that there should be a formal writing," not on whether certain entities, like the City of New York, prefer to put their settlement agreements in writing. *See Case*, 2012 WL 5951296, at *7; *see also Cedric Kushner Promotions, Ltd. v. King*, 98-CV-6859 (WHP), 1999 WL 13732 at *2 (S.D.N.Y. Jan. 11, 1999) ("The final factor is whether the agreement at issue is the type of instrument that is usually committed to a writing. For these purposes, courts have considered both the amount of money at stake as well as the magnitude and complexity of the deal."). The Court finds that the lump sum $1,850 payment in this case was not "sufficiently complex . . . such that there should be a formal writing." *Case*, 2012 WL 5951296, at *7; *see also Walker v. City of New York*, No. 05-CV-0004 (JBW), 2006 WL 1662702, at *9 (E.D.N.Y. June 15, 2006) (finding that a lump-sum $7,500 settlement between a civil rights litigant and the City of New York was not the kind of agreement that needed to be memorialized in writing). The Court finds it of further relevance that "the parties were not dealing with an oral agreement but one written in an email."

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621 (KMW), 2005 WL 1377853, at *10 (S.D.N.Y. June 9, 2005). The Court also notes that unique circumstances in this case, namely Brannon's untimely death, prevented the settlement agreement from being memorialized in a formal writing.

The *Winston* analysis "would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." *Id.* at *9. Given the simple nature of the agreement, the memorialization of the terms of the agreement in email exchanges, and the untimely death of Brannon, the Court agrees with Judge Netburn that this factor also weighs in favor of enforcement.

### IV.   CONCLUSION

Because the Court agrees with Judge Netburn that the first, third, and fourth *Winston* factors weigh in favor of enforcement of the settlement agreement, while the second factor is neutral, the Court adopts Judge Netburn's report in full and Defendants' motion to enforce the settlement is GRANTED. This resolves Dkt. No. 44.

Dated: March 10, 2016
       New York, New York

_____
ALISON J. NATHAN
United States District Judge